IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

TERRY L. ANDERSON,

      Plaintiff,

      v.

TEXTRON AVIATION, INC.
d/b/a CESSNA,

      Defendant.

Case No. 22-CV-1145-JAR

**MEMORANDUM AND ORDER**

Plaintiff Terry L. Anderson brings this action pursuant to the Americans with Disabilities Act,[1] ("ADA") as amended by the ADA Amendments Act of 2008 ("ADAAA"),[2] against his former employer, Defendant Textron Aviation, Inc. d/b/a/ Cessna ("Textron"). Plaintiff alleges that Textron fired him because of his disabilities, in violation of the ADA. This matter is before the Court on Defendant's Motion for Summary Judgment (Doc. 41). As explained in detail below, the Court grants Defendant's motion.

**I.    Legal Standard**

Summary judgment is appropriate if the moving party demonstrates that there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law.[3] In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party.[4] "There is no genuine issue of material fact

---

[1] 42 U.S.C. §§ 12101–12213.

[2] Pub. L. No. 110-325, 122 Stat. 3553.

[3] Fed. R. Civ. P. 56(a); *see also Grynberg v. Total*, 538 F.3d 1336, 1346 (10th Cir. 2008).

[4] *City of Harriman v. Bell*, 590 F.3d 1176, 1181 (10th Cir. 2010).


unless the evidence, construed in the light most favorable to the nonmoving party, is such that a reasonable jury could return a verdict for the nonmoving party."[5]  A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim."[6]  An issue of fact is "genuine" if "'the evidence is such that a reasonable jury could return a verdict for the non-moving party.'"[7]

The moving party initially must show the absence of a genuine issue of material fact and entitlement to judgment as a matter of law.[8]  In attempting to meet this standard, a movant that does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim.[9]

Once the movant has met this initial burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial."[10]  The nonmoving party may not simply rest upon its pleadings to satisfy its burden.[11]  Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant."[12]

---

[5] *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).

[6] *Wright ex rel. Trust Co. of Kan. v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001) (citing *Adler v. Wal-Mart Stores, Inc*., 144 F.3d 664, 670 (10th Cir. 1998)).

[7] *Thomas v. Metro. Life Ins. Co.*, 631 F.3d 1153, 1160 (10th Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

[8] *Spaulding v. United Transp. Union*, 279 F.3d 901, 904 (10th Cir. 2002) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)).

[9] *Adams v. Am. Guar. & Liab. Ins. Co.,* 233 F.3d 1242, 1246 (10th Cir. 2000) (citing *Adler*, 144 F.3d at 671); *see also Kannady v. City of Kiowa*, 590 F.3d 1161, 1169 (10th Cir. 2010).

[10] *Anderson*, 477 U.S. at 256; *Celotex*, 477 U.S. at 324; *Spaulding*, 279 F.3d at 904 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986)).

[11] *Anderson*, 477 U.S. at 256; *accord Eck v. Parke, Davis & Co.*, 256 F.3d 1013, 1017 (10th Cir. 2001).

[12] *Mitchell v. City of Moore, Okla.*, 218 F.3d 1190, 1197–98 (10th Cir. 2000) (quoting *Adler*, 144 F.3d at 671); *see Kannady*, 590 F.3d at 1169.

The facts "must be identified by reference to an affidavit, a deposition transcript, or a specific exhibit incorporated therein."[13] Rule 56(c)(4) provides that opposing affidavits must be made on personal knowledge and shall set forth such facts as would be admissible in evidence.[14] The nonmoving party cannot avoid summary judgment by repeating conclusory opinions, allegations unsupported by specific facts, or speculation.[15]

Finally, summary judgment is not a "disfavored procedural shortcut;" on the contrary, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action."[16]

## II. Uncontroverted Facts

The following material facts are uncontroverted, stipulated to for the purposes of summary judgment, or viewed in the light most favorable to Plaintiff.

Plaintiff has diabetes with related cellulitis. Plaintiff manages his diabetes with diet and medication. Plaintiff was first employed by one of Textron's predecessor companies, Cessna Aircraft Company, on or about August 29, 1995. Plaintiff worked for Textron until April 9, 2021. During this time, Plaintiff worked as an aircraft spray painter and a Safety Advocate.

In March 2021, Plaintiff's immediate supervisor was Timothy Thayer. Early that month, Thayer approached Plaintiff and asked him who he had recently been in contact with. Thayer then told Plaintiff that two people in his department had come down with COVID. Thayer offered Plaintiff the opportunity to quarantine, but Plaintiff indicated that it was too late for him to do so. Plaintiff then met with Human Resources ("HR") on March 3, 2021 to express

---

[13] *Adams*, 233 F.3d at 1246.

[14] Fed. R. Civ. P. 56(c)(4).

[15] *Id.*; *Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1199 (10th Cir. 2006) (citation omitted).

[16] *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).

concerns that Textron had not complied with COVID protocols. Specifically, Plaintiff was concerned that he had not been promptly notified of the potential exposure.

Plaintiff's wife, Twyla, joined Plaintiff's meeting with HR via phone and also expressed concerns regarding their risks from exposure due to their underlying health conditions. Specifically, Twyla questioned the protocols for notifying someone of possible exposure to COVID. She expressed the belief that Textron's policy was wrong and that Textron was supposed to let people know of possible exposure. She also indicated that Textron was not complying with the law and might need to retain legal counsel.

On March 17, 2021, Plaintiff reported to Thayer that he had slipped and fallen in water while trying to clean it up. Plaintiff requested to go to Health Services, and Thayer sent him to get checked out. Thayer believed that Plaintiff had described the incident to him inconsistently, by first telling Thayer that he fell, and later stating that he had not fallen, but only slipped and twisted his back. At Health Services, Plaintiff told the nurse that he had slipped in water and fallen down.

Thayer contacted his supervisor, Justin Cinotto, and told him about what had happened. Thayer told Cinotto that he believed Plaintiff had provided a different version of the incident during his visit to Health Services (a "fall") than he had previously described to Thayer (a "slip"). Cinotto advised Thayer to contact Human Resources.

Thayer reached out to Kaitlin Pritchett, an HR Business Partner, that same day. Thayer told Pritchett that he believed that Plaintiff had provided a different version of events during his visit to Health Services than he had previously reported to Thayer. Thayer requested that Pritchett conduct an investigation into the incident and Pritchett immediately complied. As part of the investigation, Pritchett interviewed several employees, including Plaintiff, and obtained

4

both written and oral witness statements. Pritchett obtained statements regarding the events on March 17, 2021 from Thayer, Plaintiff, Charles "Chuck" Miller, Cheryl Rains, Randy Beebe, and Karen Burnison.

Burnison reported that she had eyes on Plaintiff "basically the entire time" he was helping Thayer and Miller clean up water.[17] She stated that she "watched Tim and Chuck cleaning up water by the door and [Plaintiff] was around the corner messing with [absorbent pads] and moving them around with his feet. [Plaintiff] never fell."[18] Miller reported that Plaintiff had no water or dust on him when he told Thayer that he had fallen. Miller also stated that Plaintiff would have had water or dust on him if he fell. Beebe told Pritchett that he "was joking with [Plaintiff] that the company is aware of the roof leaks and if I came in here and fell I'd sue the company. Not even 10 minutes later [Plaintiff] comes up to me saying he fell due to the leaks. I didn't see any water or any signs on him though like he had fallen."[19]

Pritchett wrote a summary of her investigation, in which she concluded "[d]ue to the inconsistency of [Plaintiff's] story and confirmed statements and conversations of what people have witnessed, I recommend termination for breach of trust."[20]

It is a violation of Textron's Breach of Trust policy to provide false information, whether during a company investigation or about an injury. However, since Plaintiff was a member of a local union, Textron's Labor Relations team needed to approve of his termination before he could be terminated. Pritchett reported her findings and recommendation to the Labor Relations

---

[17] Doc 42-7 at 18.
[18] *Id.*
[19] *Id.* at 19.
[20] *Id.* at 32.

team, and the team recommended that Plaintiff be terminated.[21]  Cinotto also agreed with the recommendation.

On April 9, 2021, Defendant terminated Plaintiff for breach of trust.  This reason for termination was reflected on Plaintiff's termination paperwork.[22]

## III. Discussion

Plaintiff's remaining claim in this case is that he was terminated because of his disability (or disabilities) in violation of the ADA.[23]  The ADA prohibits "discriminat[ion] against a qualified individual on the basis of disability."[24]  To establish a prima facie case of employment discrimination under the ADA, Plaintiff must present evidence that "(1) he is disabled within the meaning of the ADA; (2) he is qualified to perform the essential functions of his job with or without accommodations; and (3) he was terminated 'under circumstances that give rise to an inference that the termination was based on [his] disability.'"[25]  "Establishment of the prima facie case in effect creates a presumption that the employer unlawfully discriminated against the employee."[26]  The court does not look to the plaintiff's subjective evaluation of the situation.[27]

---

[21] Plaintiff attempts to controvert the fact that the Labor Relations team recommended that he be terminated.  Doc. 44-6 at 1:5.  He lists as proof the fact that his union filed a grievance on his behalf following his termination.  Doc. 44 at 4:28.  But this is not contradictory, as his union is a distinct entity from the Labor Relations team.  Additionally, Plaintiff does not controvert the fact that he could not be fired without approval from the Labor Relations team.  *Id.* at 4:27.  Since Plaintiff has no proof that the team did not approve his termination, and because the fact is outside his personal knowledge, the Court deems it uncontroverted for the purposes of this Order.  *See* Fed. R. Civ. P. 56(c)(4).

[22] Doc. 42-1 at 1; Doc. 42-4 at 7.

[23] Plaintiff asserted an additional retaliation claim in his Amended Complaint (Doc. 14), which was dismissed in a prior Order (Doc. 28).

[24] 42 U.S.C. § 12112(a).

[25] *Smothers v. Solvay Chem., Inc.*, 740 F.3d 530, 544 (10th Cir. 2014) (quoting *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir. 1997)).

[26] *Tesh v. U.S. Postal Serv.*, 349 F.3d 1270, 1272 (10th Cir. 2003) (quoting *Tex. Dep't of Cmty. Affairs v. Burdine*, 45 U.S. 248, 254 (1981)).

[27] *E.E.O.C. v. C.R. England, Inc.*, 644 F.3d 1028, 1044 (10th Cir. 2011) (citation omitted).

Plaintiff attempts to meet this burden by presenting circumstantial evidence of discrimination, which requires application of the familiar *McDonnell Douglas* burden-shifting framework.[28] Thus, Plaintiff must first submit evidence from which a reasonable jury could conclude that a prima facie case of discrimination has been established. Defendant must then articulate a legitimate, nondiscriminatory reason for its action.[29] If Defendant does so, the burden shifts back to Plaintiff to identify evidence from which a reasonable jury could conclude that the proffered reason is actually a pretext designed to mask discrimination.[30] Although the burdens of production shift, the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.[31]

### A.     Prima Facie Case

Defendant argues that Plaintiff has failed to establish the prima facie case for disability discrimination. Defendant challenges only the first element of the prima facie case, which requires Plaintiff to show that he is disabled within the meaning of the ADA. Under the ADA, "[t]he term 'disability' means, with respect to an individual—(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such impairment; or (C) being regarded as having such impairment."[32] Plaintiff contends that he has an actual impairment under the ADA, and alternatively argues that he was regarded as disabled. As described below, the Court finds that Plaintiff has an actual disability under the ADA, and therefore declines to consider the alternative "regarded as" claim.

---

[28] *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *Carter v. Pathfinder Energy Servs.*, 662 F.3d 1134, 1141 (10th Cir. 2011).

[29] *Carter*, 662 F.3d at 1141.

[30] *Id.*

[31] *Id.*

[32] 42 U.S.C. § 12102(1).

Plaintiff contends that his diabetes, and the related cellulitis, constitute actual disabilities.[33] Under the ADAAA, to show actual disability, Plaintiff need only present sufficient evidence to prove (1) that he has a condition, which (2) substantially limits at least one of his identified major life activities.[34] Whether or not an impairment substantially limits a major life activity "is not meant to be a demanding standard," and "shall be made without regard to the ameliorative effects of mitigating measures."[35] To satisfy the standard, Plaintiff must show that his conditions substantially limit his ability to perform a major life activity "as compared to most people in the general population."[36]

Defendant does not dispute that Plaintiff has diabetes and cellulitis, but argues that neither condition substantially limits a major life activity. Plaintiff identifies two major life activities that he contends have been substantially limited by his diabetes and cellulitis: (1) endocrine function, and (2) ability to work. Beginning with endocrine function, ADA regulations explicitly state that "[m]ajor life activities include . . .[t]he operation of a major bodily function, including . . . endocrine . . . functions."[37] Thus, the question is whether Plaintiff's diabetes substantially limits his endocrine functions. The regulations further state that "it should easily be concluded that the following types of impairments will, at a minimum, substantially limit the major life activities indicated: . . . diabetes substantially limits endocrine

---

[33] Plaintiff also contends, for the first time in his Response to Defendant's Motion for Summary Judgment, that he has a heart condition which constitutes another disability. Doc. 44 at 11. The Court declines to consider this claim. Plaintiff's heart condition was not raised in the Pretrial Order. *Wilson v. Muckala*, 303 F.3d 1207, 1215 (10th Cir. 2002) ("[C]laims, issues, defenses, or theories of damages not included in the pretrial order are waived . . . ."). Moreover, the claim is moot since the Court finds that Plaintiff has a qualifying disability based on his diabetes.

[34] *Felkins v. City of Lakewood*, 774 F.3d 647, 651 (10th Cir. 2014).

[35] 29 C.F.R. §§ 1630.2(j)(1)(i), (vi); *see* 42 U.S.C. § 12102(4)(E)(i)(I).

[36] 29 C.F.R. § 1630.2(j)(1)(ii).

[37] 29 C.F.R. § 1630.2(i).

8

function."[38] Given these regulations and the undisputed fact that Plaintiff needs medication to regulate his endocrine function, the Court finds that Plaintiff's diabetes qualifies as a disability because it substantially limits a major life activity.

Regarding his ability to work, Plaintiff contends that his conditions cause him difficulties with walking, which impairs his work. It is undisputed that working is a major life activity. However, the only evidence in the record of a limitation to Plaintiff's ability to work is that Plaintiff had to miss two or three days of work due to a cellulitis flare in 2020. Evidence of such a limitation, standing alone, cannot support an inference that Plaintiff's diabetes or cellulitis substantially limited his ability to work. Nonetheless, Plaintiff satisfies the standard for actual disability under the ADA because his diabetes substantially limits a major life activity—his endocrine function. Since Defendant did not challenge the other two elements of the prima facie case, Plaintiff has carried his initial burden of establishing the prima facie case for purposes of summary judgment.

### B. Non-discriminatory Reason

Defendant's burden to articulate a legitimate, nondiscriminatory reason for Plaintiff's termination is not onerous.[39] When Defendant terminated Plaintiff, the stated reason for the termination was a breach of trust.[40] As discussed above, Pritchett conducted an investigation into the alleged slip and fall. Based on the inconsistent reports from eyewitnesses, Pritchett concluded that Plaintiff had lied about the incident. Such dishonesty would violate Textron's Breach of Trust Policy, and violation of the policy is grounds for termination. This justification,

---

[38] 29 C.F.R. § 1630.2(j)(3)(iii).

[39] *Dewitt v. S.W. Bell Tele. Co.*, 41 F. Supp. 3d 1012, 1018 (10th Cir. 2013) (citing *Anaeme v. Diagnostek, Inc.*, 164 F.3d 1275, 1279 (10th Cir. 1999)).

[40] Docs. 42-1 at 1; 42-4 at 7.

which on its face is legitimate and non-discriminatory, satisfies Defendant's "exceedingly light" burden.[41]

### C.  Pretext

The burden thus shifts back to Plaintiff to show that the proffered justification is pretextual. "[A] plaintiff can establish pretext by showing the defendant's proffered non-discriminatory explanations for its actions are 'so incoherent, weak, inconsistent, or contradictory that a rational factfinder could conclude [they are] unworthy of belief.'"[42] Typically, a plaintiff attempts to demonstrate pretext in one or more of three ways:

> (1) "[E]vidence that the defendant's stated reason for the adverse employment action was false"; (2) "evidence that the defendant acted contrary to a written company policy prescribing the action to be taken by the defendant under the circumstances"; or (3) "evidence that the defendant acted contrary to an unwritten policy or contrary to [the employer's] practice when making the adverse employment decision affecting the plaintiff."[43]

Here, Plaintiff attempts to demonstrate pretext by showing that Defendant's stated reason for terminating him was false. However, instead of presenting evidence of falsity, Plaintiff casts doubt on the logic of the decision. Plaintiff insists that he never made inconsistent statements and that he would have had no reason to do so, since he did not miss any work, file a worker's compensation claim, or otherwise benefit from the accident. And, even if he did lie, Plaintiff argues that it would be nonsensical to terminate an employee for such a lie.

Plaintiff fails to carry his burden because he does not present evidence that the decision

---

[41] *Goodwin v. Gen. Motors Corp.*, 275 F.3d 1005, 1013 (10th Cir. 2002) (quoting *Sprague v. Thorn Ams., Inc.*, 129 F.3d 1355, 1363 (10th Cir. 1997)).

[42] *Johnson v. Weld County*, 594 F.3d 1202, 1211 (10th Cir. 2010) (second alteration in original) (quoting *Hinds v. Sprint/ United Mgmt. Co.*, 523 F.3d 1187, 1197 (10th Cir. 2008)).

[43] *Macon v. United Parcel Serv., Inc.*, 743 F.3d 708, 714 (10th Cir. 2014) (second alteration in original) (quoting *Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1230 (10th Cir. 2000)).

was pretext for unlawful discrimination. While pretext may be inferred from implausible actions,[44] Plaintiff does no more than challenge Textron's logic. This is insufficient to permit the Court to infer that there is a genuine dispute about whether he was terminated in violation of the ADA.

None of the evidence before the Court calls into question the validity of the investigation or its findings, nor is there evidence that Plaintiff's disability was a factor in the decision. The Court's task is not to "ask whether the employer's decision was 'wise, fair or correct, but whether [it] honestly believed [the legitimate, nondiscriminatory] reasons [it gave for its conduct] and acted in good faith on those beliefs.'"[45]

The truth of what happened on March 17, 2021 (i.e. whether Plaintiff fell, and whether he told the truth consistently), is immaterial to the determination of whether Defendant's belief that Plaintiff misrepresented the incident was held in good faith. And there is no evidence that Defendant acted in anything but good faith. It is undisputed that Pritchett investigated the incident and found nothing to support Plaintiff's version of events. On the contrary, Pritchett found eyewitness testimony stating that Plaintiff never fell, as well as numerous statements that contradicted Plaintiff's story. Pritchett thus concluded that Plaintiff had lied about the incident, which is a violation of the Breach of Trust policy. Based on these findings, the Labor Relations team made the recommendation to terminate Plaintiff. None of Plaintiff's arguments disprove this evidence.

Given that Plaintiff does not controvert the findings of the investigation, nor that Thayer

---

[44] *See Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir. 1997).

[45] *Johnson v. Weld County*, 594 F.3d 1202, 1211 (10th Cir. 2010) (quoting *Rivera v. City & Cnty. of Denver*, 365 F.3d 912, 925 (10th Cir. 2004)).

believed Plaintiff had changed his story,[46] the Court finds that Defendant had a good-faith belief that Plaintiff violated the Breach of Trust policy.  Plaintiff has failed to raise a genuine issue of fact that the stated reason was pretextual or that his disabilities played any role in the decision to terminate him.  Accordingly, Defendant is entitled to summary judgment on Plaintiff's remaining claim of disability discrimination.

**IT IS THEREFORE ORDERED BY THE COURT** that Defendant's Motion for Summary Judgment (Doc. 41) is **granted**.

**IT IS SO ORDERED.**

Dated: January 4, 2024

                                                                S/ Julie A. Robinson
                                                                JULIE A. ROBINSON
                                                                UNITED STATES DISTRICT JUDGE

---

[46] Plaintiff does controvert Thayer's claim that Plaintiff changed his story, but Plaintiff does not controvert the fact that Thayer subjectively believed Plaintiff had misrepresented the incident.